UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS FLANAGAN, RUSSELL
THOMPSON, SARAH MOFFATT, KYLE
GRANT and CHRISTINE FLANAGAN,

                        Plaintiffs,

            -against-

GIRL SCOUTS OF SUFFOLK COUNTY, INC.,
PAMELA MASTROTA, EMILY BROWN,
TAMMY SEVERINO, DONNA SMELAND,
JACQUELINE GORDON, DAWN LOTT, SARAH
MCCANDLESS, BRANDY SCOTT and JENNIFER
FRIEDMAN,

                       Defendants.
------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-7153 (KAM) (ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiffs Thomas Flanagan, Russell Thompson, Sarah Moffatt, Kyle Grant and Christine

Flanagan (collectively "Plaintiffs") bring this action against the Girl Scouts of Suffolk County,

Inc. ("GSSC"), Pamela Mastrota, Emily Brown, Tammy Severino, Donna Smeland, Jacqueline

Gordon, Dawn Lott, Sarah McCandless, Brandy Scott and Jennifer Friedman ("collectively

"Defendants"), alleging violations of the National Labor Relations Act ("NLRA"), the New

York State Labor Law ("NYLL"), the New York State Not for Profit Corporate Law ("NY

NFPL"), 42 U.S. Code §1981 ("Section 1981"), the New York State Human Rights Law ("NY

SHRL"), the Federal False Claims Act ("FCA") and the New York State False Claims Act ("NY

FCA"). Before the Court, on referral from District Judge Matsumoto, are two motions to

dismiss, one filed by Defendants GSSC, Tammy Severino, Donna Smeland, Jacqueline Gordon,

Dawn Lott, Sarah McCandless, Brandy Scott and Jennifer Friedman (the "Girl Scout

Defendants"), and a second filed by Defendants Pamela Mastrota and Emily Brown (the "Former Officer Defendants"). For the reasons set forth below, the undersigned respectfully recommends the motions be granted in part, denied in part.

## BACKGROUND

### A. Factual Background

The following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Plaintiffs were all employed by GSSC and reside in Suffolk County, New York. Am. Compl. ¶¶ 10-15. Plaintiff Thomas Flanagan was employed by GSSC from October 5, 1998 until June 22, 2021. *Id.* at ¶10. At the time of his termination he was the Chief Operating Officer for GSSC. *Id.* Plaintiff Russell Thompson was employed by GSSC from June 26, 1995 until June 22, 2021. *Id.* at ¶11. At the time of his termination he was the Chief Financial Officer for GSSC. *Id.* Plaintiff Sarah Moffatt was employed by GSSC from January 7, 2002 until June 22, 2021. *Id.* at ¶12. At the time of her termination she was the Chief of Girl Experience for GSSC. *Id.* Plaintiff Kyle Grant is an African American man and was employed by GSSC from September 12, 2002 until June 22, 2021. *Id.* at ¶13. At the time of his termination he was the Director of Technology for GSSC. *Id.* Plaintiff Christine Flanagan was employed by GSSC from July 7, 2005 until June 22, 2021. *Id.* at ¶14. At the time of her termination she was the Director of Public Relations for GSSC. *Id.*

GSSC is a 501(c)(3) of the United States Internal Revenue Code organization.  *Id.* at ¶ 16.  GSSC trains and sponsors regular programs aimed at instructing girls and young women in life and societal important matters that directly impact, support and seek to address matters of public health and public safety. According to their website, one of every four girls in grades K through 12 in Suffolk County is a Girl Scout.  *Id.* at ¶ 27.

The Individual Defendants are or were either employees, directors or officers of GSSC. *Id.* at  ¶¶ 19-25.  Defendant Pamela Mastrota is the former President and Chief Executive Officer for GSSC.  *Id.* at ¶17.  Mastrota became GSSC's Chief Executive Officer in April of 2020.  *Id*. at ¶¶ 45, 49.  She "was either terminated or resigned" on November 19, 2020.  *Id.* at ¶ 122. Defendant Emily Brown was the Fund Development Coordinator of GSSC.  *Id.* at ¶ 18.  Brown was either terminated or resigned shortly after Mastrota.  *Id*. at ¶ 123.  Defendant Tammy Severino was the Interim President and Chief Executive Officer for GSSC.  *Id*. at ¶ 19.  Severino was named Interim President and CEO in December 2020.  *Id*. at ¶ 125.  Defendant Donna Smeland is the Board Chair of GSSC.  *Id*. at ¶ 20.   Defendant Jacqueline Gordon was the 1st Vice Chair of GSSC.  *Id*. at ¶ 21.  Defendant Dawn Lott was the 2nd Vice Chair of GSSC.  *Id*. at ¶ 22.   Defendant Sarah McCandless was the 3rd Vice Chair of GSSC.  *Id*. at ¶ 23.  Defendant Brandy Scott was the Treasurer of  GSSC.  *Id*. at ¶ 24.  Defendant Jennifer Friedman was the Secretary of  GSSC.  *Id*. at ¶ 25. Defendants Smeland, Gordon, Lott, McCandless, Scott and Friedman were the officers of the GSSC and acted on behalf of the Board (collectively, the "Board").  *Id*. at ¶ 24.

This lawsuit arises out of certain actions taken by the GSSC during the brief tenure of Mastrota as President and Chief Executive Officer for GSSC.  According to Plaintiffs, during her first week of employment in April 2020, Mastrota stated that Plaintiff Grant, "Director of

Technology, would be one of the first people fired and that firing would occur within three to four months. This statement was made prior to [Mastrota] ever meeting [Grant], She stated that [Grant] was unqualified, overpaid and only obtained his position because his mother Yvonne Grant was the previous CEO." *Id*. at ¶ 45.   Over the course of the next few months Mastrota implemented pay cuts to many employees, including Plaintiffs. *See, e.g., id.* at ¶¶ 47, 50, 51, 53, 71, 79.  She also downgraded certain titles, including demoting Grant from Director of IT to IT Specialist, stripping Mr. Flanagan of his title of Chief Operating Officer and removing Thompson from his position as Chief Financial Officer. *See, e.g., id.* at ¶¶ 51, 59, 60, 79.

According to Plaintiffs, on May 20, 2020, during a meeting of the board of directors Mastrota "presented libelous and defamatory power point slides to the [Board] that disparaged the collective reputations of the management team. The management team of GSSC consisted of all Plaintiffs. One slide specifically stated that the management team "lacks transparency, accountability, [and] key competencies" and are "treated favorably [with] compensation, time and benefits." *Id*. at ¶ 62.   At this same meeting, Plaintiffs allege that Mastrota "accused the Director of Human Resources, Ildalisa Diaz, of a 'lack of confidentiality' regarding employee complaints by sharing these complaints with unauthorized members of staff." *Id*. at ¶ 67.   Plaintiffs were not informed of the complaints lodged against them by Mastrota prior to the presentation to the Board. *Id*. at ¶ 63.  According to Plaintiffs,  Mastrota "falsely alleged that GSSC was bleeding money, was suffering from the mismanagement of Yvonne Grant and the COVID-19 pandemic as a pretext for making excessive salary cuts to Plaintiff's salaries and a plan on eliminating their job titles, all without suffering any salary reduction of her own." *Id*. at ¶ 88.

After learning of Mastrota's board presentation, Plaintiffs allege that they were "[c]oncerned for the good of the employees, the GSSC and its programs, as well as those that they

4

served," and therefore, "on June 8, 2020 Plaintiffs, acting as whistleblowers, forwarded a letter to the [Board] requesting a conference in an effort to resolve the multitude of issues faced by GSSC and impacting the future of all employees, including Plaintiffs." *Id*. at ¶ 90.  Smeland responded the next day, advising Plaintiffs that a "meeting would be held between the parties in the near future." *Id*. at ¶ 91.  According to Plaintiffs, no meeting was scheduled. *Id*.  However, Plaintiffs acknowledge that on June 30, 2020 a teleconference was held between counsel for Plaintiffs and Defendants where Plaintiffs' counsel reiterated that they were reporting unethical violations under the GSSC Whistleblower policy.  In that meeting a request was made for more specifics and details to be provided by Plaintiffs. *Id*. at ¶ 92.

On July 15, 2020, Plaintiffs collectively drafted and delivered a 36-page letter to GSSC's Board alleging various concerns related to their employment at GSSC and identifying themselves as whistleblowers.[1] *Id*.  at ¶¶ 40-44, 93.  Plaintiffs  delivered the letter to the Board under the promise and protection of the Girl Scout Council's Whistle Blower policy. *Id*. at ¶ 40.  Plaintiffs allege that the letter described violations of GSSC ethics by Mastrota "including mismanagement of County, State and Federal funds. Since 2018, the agency received at least $200,000 in NYS funding and receives annual funding from Suffolk County as well as federal Paycheck Protection Plan (PPP) funds. Defendants engaged in defamation, slander, libel, disparagement of staff, threats of retaliation, disparate treatment, abuse of authority,

_____

[1] The July 15, 2020 letter is referenced repeatedly throughout the Amended Complaint.  Plaintiffs did not attach the letter to the Amended Complaint, however has been provided to the Court as Exhibit B to the Declaration Of Jeffrey M. Schlossberg, Esq. In Support of Girl Scout Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Schlossberg Dec.").  While the July letter is not expressly incorporated by reference into the Amended Complaint it "is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted)

intimidation, harassment, bullying, retaliation, abuse, lack of professionalism, fraud, misrepresentation of financial facts, accounting irregularities, and violations of Federal and State law including but not limited to the New York State Wage Theft Protection Act." *Id*. at ¶ 94. According to Plaintiffs, "[i]n making their Complaint to the [Board], Plaintiffs relied upon the GSSC Employee Handbook's Whistle Blower policy as guidance and protection." *Id*. at ¶ 100. The Whistle Blower policy in the Handbook provides that:

> all applicable laws and regulations. The matters which should be reported under this policy include suspected fraud, theft, embezzlement, accounting or auditing irregularities, bribery, kickbacks, misuse of our assets or suspected regulatory, compliance, or ethics related issues, concerns or violations.

*Id.* In addition, the Whistle Blower policy provides that "[t]hese policies are not a vehicle for reporting . . . alleged employment discrimination or sexual or any other form of unlawful harassment, all of which should be dealt with in accordance with the EEO policies of this manual." *Id.*  The July letter charges Mastrota with discrimination, threatening, intimidating and coercing employees, malicious gossip and derogatory attacks.  Schlossberg Dec. Ex. B. GSSC appointed the law firm of Guercio & Guercio, LLP to serve as independent investigators of the July 2020 letter.  Am. Comp.  ¶ 104.  Plaintiffs were individually interviewed and provided document responses to Guercio & Guercio's requests.  *Id*. at ¶¶ 107, 110-111. According to Plaintiffs, the results of this investigation were never made public.  *Id*. at  ¶¶ 104, 110, 111, 115, 116.

In October of 2020, Plaintiffs Sarah Moffatt and Kyle Grant wrote "separate and distinct" correspondence complaining about retaliation and abuse.  *Id*. at  ¶¶ 113-14 (at page 32).[2]  In the

---

[2] As noted by Defendants, the paragraphs in the Amended Complaint are not consecutively numbers and the numbering repeats at certain points throughout the document.

Amended Complaint, Plaintiffs allege Plaintiff Moffatt sent an email to GSSC Human Resources Department detailing retaliatory treatment she was receiving from Defendant Mastrota. This complaint was separate and distinct from the Plaintiffs' initial Whistleblower grievances. *Id*. at ¶ 113. Additionally, Plaintiff Grant sent an email to GSSC HR detailing the targeting, harassment, and abusive treatment he received consistently from Defendant Mastrota and Defendant Brown. *Id*. at ¶ 114. Neither email references a claim of employment discrimination.

The Amended Complaint states that on November 11, 2020, Defendant Smeland notified Plaintiffs that GSSC concluded its investigation in response to the Whistleblower grievances. *Id*. at ¶ 118. "At this meeting, while avoiding what were clear complaints raised by Plaintiffs, Defendant SMELAND stated that GSSC's investigation, 'did not see claims of discrimination.'" *Id.* Shortly thereafter, Defendants Mastrota and Brown either resigned or were terminated. *Id*. at ¶¶ 122-23.

On February 2, 2021, Plaintiffs' attorneys submitted a letter to the GSSC executive board "regarding Plaintiff's current state of employment, and Plaintiff's lack of being made whole following the actions of former CEO MASTROTA which were approved by the EXECUTIVE BOARD. *Id*. at ¶ 126. "Specifically Plaintiffs questioned their lack of being restored to their titles, lack of return to their salaries or at least an equitable return and not the 20 - 40% cuts suffered by Plaintiffs. Plaintiffs also questioned the lack of back pay for their unjust salary cuts, the lack of responsiveness from the [Board] to their complaints and the resulting erosion in trust in the organization, a trait that must be embodied within and by the Girl Scouts." *Id*. at ¶ 127.

By letter dated March 11, 2021, Plaintiffs' counsel set forth certain proposed settlement demands that included Plaintiffs' request for an amicable separation agreement. *Id*. at ¶¶ 128, 132, 137. On March 17, 2021, counsel for GSSC responded by denying any wrongdoing on

behalf of the GSSC and refusing to comment on Plaintiffs' proposal. *Id*. at ¶ 133.  On April 6, 2021, a teleconference was held between the parties where the proposed separation agreement was discussed. GSSC issued a counter offer to Plaintiffs' proposed separation agreement. *Id*. at ¶ 136.  On May 5, 2021, the parties again teleconferenced regarding the proposed separation agreement, and Plaintiffs were informed that there was no plan to terminate Plaintiffs. *Id*. at ¶ 137.  According to Plaintiffs, Defendants were informed at this conference that Plaintiffs were "no longer looking to separate from GSSC, but rather sought to be treated fairly." *Id*. at ¶ 138. 139.  On May 12, 2021, "Plaintiffs again teleconferenced with GSSC and clearly and plainly articulated that all Plaintiffs wanted to remain in the employment of GSSC. Plaintiffs repeated their desire to only be made whole for all they have suffered since April of 2020. Plaintiffs then continued to dutifully served [sic] the GSSC." *Id*. at ¶ 139.  Plaintiffs ultimately ended negotiations on May 27, 2021. *Id*. at ¶ 140.  Plaintiffs' email to Defendants marking the conclusion of negotiations noted the following:

> Given that it is clear that our client's must now pursue their rights as whistle-blowers and your vail threat to terminate them, we must remind you and your clients that any form of retaliation and wrongful actions aimed to harm our clients' terms and conditions of their employment will be addressed in the most significant of ways.

*Id.*  Plaintiffs allege that on June 22, 2021, in retaliation for Plaintiffs' whistle blower complaint, "GSSC terminated each and every Plaintiff's employment under the false pretense that the Plaintiffs did not wish to continue their employment. In a contrived and calculated letter, Defendant SMELAND admitted that Plaintiffs were essentially being terminated 'because there was now nothing more to discuss regarding severance, and because your separation has been delayed for this purpose only, your continued employment has become untenable.'" *Id*. at ¶ 143.

8

According to Plaintiffs, in a series of further retaliatory adverse actions, Plaintiffs' benefits were terminated on June 30, 2021 despite Plaintiffs' letter of termination from Defendants indicating that all benefits would remain in effect and last through July 31, 2021, GSSC prevented Plaintiffs from accessing their Flexible Spending Accounts and Health Savings Accounts by locking Plaintiffs out of their own accounts, GSSC failed to pay Plaintiffs their complete salaries for the pay cycle in which Plaintiffs were terminated, despite a pattern and practice of paying separated employees for the full, GSSC denied payment of Plaintiffs' accrued sick time, personal time and other benefits, despite GSSC's pattern and practice of paying other separated employees for their accrued time, Defendants failed to pay Plaintiffs' 403b contributions for time periods ranging from two weeks to more than one month following termination, Defendants denied Plaintiffs access to retrieve digital assets and property, including intellectual property, HIPPA protected medical information and other privileged correspondence, Defendants contested Plaintiffs' Unemployment Claims stating falsely that Plaintiffs resigned, Defendants also cancelled cell phone service without warning despite Plaintiffs' multiple and documented attempts to have the phone numbers transferred in the same manner as done with other separated employees, Defendants refused Plaintiffs' request to remove the Apple Identifications from Plaintiffs' former work computers, and Defendants failed to immediately cancel the GSSC credit card in Thomas Flanagan's name upon termination as had been done for all other separated employees. *Id*. at ¶¶ 148-164.

Based upon the foregoing set of facts Plaintiffs assert eight causes of action, including the following: First Count, violation of the NLRA; Second Count, violation of NYLL Section 215; Third Count, violation of  NY NFPL Section 715-b; Fourth Count, violation of NY NFPL Section 720-a; Fifth Count, violation of Section 1981, including claims for discrimination,

9

hostile work environment and retaliation; Sixth Count, discrimination under the NYSHRL, including discrimination, retaliation and hostile work environment; Seventh Count, violation of the Wage Theft Protection Act and NYLL Section 198; and Eighth Count, violation of the FCA and NY FCA.

**B. Procedural Background**

Plaintiffs filed the original complaint in this action on December 28, 2021. ECF No. 1. The Amended Complaint was filed on May 13, 2022. ECF No. 21. Defendants filed letter requests to Judge Hurley requesting permission to file a motion to dismiss the Amended Complaint setting forth the grounds for dismissal on May 24 and 26, 2022. ECF Nos. 23, 24. Plaintiffs failed to respond to the pre-motion conference request, and, Judge Hurley waived the requirement of a conference and set a briefing schedule on the motions to dismiss. The case was reassigned to Judge Matsumoto on July 12, 2022. On September 9, 2022, Defendants moved to dismiss Plaintiffs' claims pursuant to Rules 12 (b)(1) and (6). ECF Nos. 30, 37. Plaintiffs oppose the motions in one combined opposition. ECF No. 34. By Order dated April 6, 2023, the motions were referred to the undersigned by Judge Matsumoto.

**DISCUSSION**

**A. Standard of Review**

**1. Motion to Dismiss - -Rule 12(b)(1)**

"'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first.'" *Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y.

2011)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"[F]ederal courts are courts of limited jurisdiction which thus requires a specific grant of jurisdiction." *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir. 2009) (internal quotation marks and citations omitted); *see Gunn v. Minton*, 568 U.S. 251 (2013); *see also Allen v. Mattingly*, No. 10 CV 0667 (SJF)(ARL), 2011 U.S. Dist. LEXIS 34206, 2011 WL 1261103, at *5 (E.D.N.Y. Mar. 29, 2011) ("[f]ederal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction") (citations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Under both Rule 12(b)(1) and Rule 12(b)(6) "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). "When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Baur v. Comm'r of Soc. Sec.*, No. 10-CV03781 (CBA), 2011 U.S. Dist. LEXIS 52128, 2011 WL 1877726, at *2 (E.D.N.Y. May 16, 2011) (internal quotation marks and citation omitted). Moreover, "[i]n contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a

11

preponderance of the evidence that it exists.'" *MacPherson v. Town of Southampton*, 738 F.

Supp. 2d 353, 361 (E.D.N.Y. 2010). Finally, "subject matter jurisdiction, because it involves the

court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535

U.S. 625, 630, (2002); *see Feinstein v. Chase Manhattan Bank*, No. 06 CV 1512 JFB ARL, 2006

U.S. Dist. LEXIS 16507, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006).

### 2.  Motion to Dismiss -  Rule 12(b)(6)

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing

a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration

to facts stated on the face of the complaint, in documents appended to the complaint or

incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v.*

*Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see*

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some

cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint." *Id. (quoting Global Network*, 458 F.3d at 157)).

## B. Motion to Dismiss

### 1. First Count - National Labor Relation Act Claim

Defendants move to dismiss Plaintiffs' claim under the NLRA pursuant to Rules 12(b)(1) and 12(b)(6). The Girl Scout Defendants contend that "Plaintiffs' allegations that they 'engaged in a concerted effort to remedy the violations of high business and personal ethical standards" fall, if at all, within Sections 7 and 8 of the NLRA, and thus, should be dismissed pursuant to Rule 12(b)(1)," because "'[w]hen an activity is arguably subject to section 7 or section 8 of the [NLRA], . . . federal courts must defer to the exclusive competence of the National Labor Relations Board.' *Husain v. Smarte Carte, Inc.,* No. 10-CV-1844 (KAM), 2011 U.S. Dist. LEXIS 143769, at *8 (E.D.N.Y. Dec. 12, 2022) (citing *San Diego Bldg. Trades Council v.*

*Garmon*, 359 U.S. 236, 244-45 (1959)).”  GS Def. Reply Mem. at 4.  The Former Officer Defendants argue that “there are no factual allegations demonstrating that Plaintiffs pursued their claims before the National Labor Relations Board notwithstanding that they now assert they ‘acted in concert which is an activity protected under the NYLRA.’” Former Officers Reply at 6. According to the Former Officer Defendants, “the Amended Complaint should be dismissed pursuant to a *Garmon* preemption analysis because the ‘core of Plaintiffs’ claim[s]’ fall within the NLRA and could be presented to the NLRB.” *Id.*

Indeed, Plaintiff concedes that “in Amended Complaint paragraphs 165 and 167, Plaintiffs acted, complained and filed in concert which is an activity protected under the NYLRA[sic].”  Pl. Mem. at 13.  It is well settled that “enforcement of the NLRA is committed to the National Labor Relations Board ("NLRB") in the first instance [and] this court lacks jurisdiction to hear such claim.” *Reale v. Shea*, No. 2:14-cv-00583-APG-GWF, 2014 U.S. Dist. LEXIS 119100, 2014 WL 4206840 (D. Nev. Aug. 25, 2014); s*ee also Marbley v. Teamster Local 988*, No. 4:22-cv-3396, 2023 U.S. Dist. LEXIS 127194 (S.D. Tex. July 24, 2023) (“this Court lacks the jurisdiction to hear Plaintiff's NLRA claim. The NLRB has exclusive jurisdiction over claims of unfair labor practices, including violations of Section 8(b)(1)(A)”); *Victory Sanitation, Ltd. v. Private Sanitation Union Local 813*, 90 Civ. 5836 (JSM), 1993 U.S. Dist. LEXIS 11344 (S.D.N.Y. Aug. 13, 1993)(citing *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S. Ct. 851, 859, 70 L. Ed. 2d 833 (1982) ("as a general rule, federal courts do not have jurisdiction over activity which is 'arguably subject to § 7 or § 8 of the [NLRA],' and  they 'must defer to the exclusive competence of the National Labor Relations Board'") (quoting *Garmon*, 359 U.S. at 245, 79 S. Ct. at 780) (alteration in original); *Amalgamated Ass'n of Street Employees v. Lockridge*, 403 U.S. 274, 284, 91 S. Ct. 1909, 1916, 29 L. Ed. 2d 473 (1971)

(*Garmon* "held that the National Labor Relations Act preempts the jurisdiction of state and federal courts to regulate conduct that is 'arguably subject to § 7 or § 8 of the Act'"); *International Longshoremen's Local 1416 v. Ariadne Shipping Co.*, 397 U.S. 195, 200, 90 S. Ct. 872, 875, 25 L. Ed. 2d 218 (1970) ("the jurisdiction of the National Labor Relations Board is exclusive and preemptive as to activities that are 'arguably subject to regulation under § 7 or § 8 of the Act'")).  Plaintiffs have failed to allege that the claims have been brought before the NLRB.  Accordingly, the undersigned respectfully recommends that Plaintiffs' First Count for violation of the National Labor Relations Act be dismissed with prejudice.

### 2.  Count Two – NYLL Section 215 Claim

Defendants move to dismiss Plaintiffs' claim under Section 215 of the NYLL on the grounds that none of Plaintiffs' allegations satisfy the statutory requirement that Plaintiffs made a complaint by which they suggested that they had any good-faith belief that Girl Scout Defendants violated any provision of the NYLL and Plaintiffs cannot show a causal connection between that complaint and any adverse action. GS Def. Mem. at 14-15; Former Officer Def. Mem. at 6-7.

"Section 215 prohibits an employer from in any manner discriminating or retaliating against 'any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter.'" *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020) (quoting NYLL § 215(a)(1)).  "To establish a prima facie case, the plaintiff must show '(1) participation in protected activity known to the defendant, like the filing of a [NYLL] lawsuit; (2) adverse employment action [a]ffecting the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Cortese*

15

*v. Skanska Koch, Inc.,* 544 F. Supp. 3d 456, 470 (S.D.N.Y. 2021) (quoting *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010)).

To satisfy the first prong of the test for a claim of retaliation, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335, 179 L. Ed. 2d 379 (2011).  Indeed, under the New York Labor Law, Plaintiffs must show that they "complained about a specific violation of the Labor Law." *Castagna v. Luceno*, No. 09 Civ. 9332 (CS), 2011 U.S. Dist. LEXIS 45567, 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011) (quoting *Epifani v. Johnson*, 65 A.D.3d 224, 882 N.Y.S.2d 234, 244 (App. Div. 2d Dep't 2009)) (internal quotation marks omitted).  While the employee need not cite a specific statute, the "complaint to the employer [must] be of a colorable violation of the statute."   *Castagna*, 2011 U.S. Dist. LEXIS 45567, at *41-42, 2011 WL 1584593 (quoting *Weiss v. Kaufman*, No. 103473/2010, 2010 N.Y. Misc. LEXIS 5699, 2010 WL 4858896 (Sup. Ct. N.Y. Cty. Nov. 18, 2010)) (internal quotation mark omitted); *see also, e.g., Duarte v. Tri-State Physical Med. & Rehab., P.C.,* No. 11 Civ. 3765 (NRB), 2012 U.S. Dist. LEXIS 96249, 2012 WL 2847741, at *3 (S.D.N.Y. July 11, 2012) (denying a motion to dismiss a New York Labor Law retaliation claim where the plaintiff had begun asking her coworkers whether they were receiving statutorily required overtimes wages); *Patel v. Baluchi's Indian Rest.*, No. 08 Civ. 9985 (RJS), 2009 U.S. Dist. LEXIS 66512, 2009 WL 2358620, at *11 (S.D.N.Y. July 30, 2009) (finding that the plaintiffs had alleged a retaliation claim where they complained to their employer of "'substandard and unsafe working conditions, low wages, and lack of benefits'").

Here, in response to the motion to dismiss, Plaintiffs claim that their complaints, including to Mastrota on May 21, 2020,  related "to the inequitable treatment they were receiving along with the misapplication of Girl Scout finances and goodwill as employees of Defendants until June 22, 202."  Pl. Mem. at 21.  However, this statement, just like the Amended Complaint does not set forth a violation of the New York Labor Law, and therefore cannot support a claim for retaliation pursuant to NYLL Section 215.  *See Zhang v. Centene Mgmt. Co*., No. 21 CV 5313 (DG) (CLP), 2023 U.S. Dist. LEXIS 68718 (E.D.N.Y. Feb. 2, 2023) (dismissing Section 215 retaliation claim because "plaintiff has not alleged any conduct on the part of defendants that could reasonably be construed to violate the Labor Law, and has only alleged conduct that she believes violated NYCRR sections not within the Labor Law, her Section 215 claim fails to state a plausible claim"); *Murray v. United Parcels Service, Inc*., No. 20 CV 1427, 2022 WL 4468295, at *19-20 (E.D.N.Y. Sept. 25, 2022) (holding that because plaintiffs' Section 215 claim was based on an allegation that they "raised concerns" about DOT violations and not of any provision of the NYLL, they failed to state a claim for retaliation under Section 215); *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 100 (S.D.N.Y. 2020) (dismissing a Section 215 counterclaim where the counterclaim plaintiff did not "allege that [he] made a complaint about a violation of the New York Labor Laws or an order of the Commissioner of Labor*"); Kassman v. KPMG LLP*, 925 F. Supp. 2d at 472 (dismissing a claim under Section 215, holding that "under the New York Labor Law, Plaintiffs must show that they complained about a specific violation of the Labor Law" and finding that the alleged complaints did not "ris[e] to the level of specificity required to state a retaliation claim under . . . the New York Labor Law") (internal quotation marks omitted); *Robledo v. No. 9 Parfume Leasehold*, No. 12 CV 3579, 2013 U.S. Dist. LEXIS 57383, 2013 WL 1718917, at *7 (S.D.N.Y. 2013) (stating that "to establish a

17

claim under Section 215(1)(a), a plaintiff must show that she complained to her employer about its violations of the Labor Law and that she was terminated because of her complaints").

Plaintiffs have failed to respond to Defendants' motion to dismiss the NYLL Section 215 claims on the basis that the allegations in the Amended Complaint fail to establish a causal connection between the protected activity and the adverse employment action.  Plaintiffs failure to address this argument in opposition to the Girl Scout Defendants' motion to dismiss amounts to a concession of this argument.  *See, e.g., Billings v. N.Y. State Dep't of Corr.*, No. 19-cv-11796 (NSR), 2022 U.S. Dist. LEXIS 149216, 2022 WL 3577970 (S.D.N.Y. Aug. 19, 2022) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims"); *Francisco v. Abengoa, S.A.,* 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021) ("Numerous courts in this District have held that a party's failure to address an issue in its response to a Rule 12(b)(6) motion amounts to a concession or waiver of the argument"); *Western Bulk Carriers KS v. Centauri Shipping Ltd.,* No. 11 Civ. 5952 (RJS), 2013 U.S. Dist. LEXIS 49808, at *9 (S.D.N.Y. Mar. 11, 2013) (holding that plaintiff conceded argument by failing to address it in opposition brief).  Accordingly, the undersigned respectfully recommends Plaintiffs' claim pursuant to NYLL Section 215 be dismissed for failure to allege a violation of NYLL and a failure to allege a causal connection between the protected activity and an adverse employment action.

### 3.  Count Three –  Not-For-Profit Corporation Law Section 715-b Claim

Defendants also move to dismiss Count Three of the Amended Complaint, arguing that "the Amended Complaint does not allege the GSSC did not have relevant policies to protect whistle blowers and failed to diligently implement those policies" and therefore this cause of

action fails as a matter of law.  GS Mem. at 18-19; Former Officer Def. Mem. at 7.  Plaintiffs argue the contrary. Pl. Mem. at 22-24.

Plaintiffs' Section 715-b claim must be dismissed regardless of whether GSSC had a whistle blower policy.  While not all courts are in agreement, there is authority for the position that Section 715-b provides a private right of action for employees of a not-for-profit corporation.  *See, e.g., Joshi v. Trs. of Columbia Univ.,* 515 F. Supp. 3d 200, 224 (S.D.N.Y. 2021); *Ferris v Lustgarten Foundation*, 189 AD3d 1002, 1006, 138 N.Y.S.3d 517 (2d Dept 2020).  However, according to recent authority, that privilege does not extend to officers of a not-for profit corporation.  "Because N-PCL § 112(a)(7) provides for the Attorney General's protection of the right of officers of a not-for-profit organization, allowing . . . an officer, a private right of action under N-PCL § 715-b would be inconsistent with the legislative scheme." *Rosen v Zionist Org. of Am*., 2023 N.Y. Misc. LEXIS 1428, 2023 N.Y. Slip Op. 31004[U] (Sup Ct. Mar. 29, 2023); *see also Pisano v. Reynolds*, 2023 N.Y. Misc. LEXIS 2573 2023 NY Slip Op 31741(U) (Sup. Ct. May 23, 2023).

Accordingly, since all Plaintiffs are alleged to be officers of the GSSC, the undersigned respectfully recommends that Plaintiffs' claim pursuant to Section 715-b of the New York Not-for-Profit Law be dismissed with prejudice.

### 4.  Count Four - Not-For-Profit Corporation Law Section 720-a Claim

Defendants argue that Section 720-a of the New York Not for Profit Law does not create a private right of action.  GS Def. Mem. at 19-20; Former Officer Mem. at 7.  Plaintiffs argue that a private right of action is available in certain circumstances. Pl. Mem. at 25-26.

"This statute, . . . does not create a private right of action but rather immunizes certain non-profit directors and officers for conduct in their official capacity, unless such conduct

19

constitutes gross negligence or an intentional tort." *Meeker v. McLaughlin*, No. 17-cv-5673 (SN), 2018 U.S. Dist. LEXIS 117211, at *27, 2018 WL 3410014 (S.D.N.Y. July 13, 2018). Accordingly, the undersigned respectfully recommends that Plaintiffs' claim pursuant to Section 720-a be dismissed with prejudice.

5. **Fifth Count – Section 1981 Discrimination, Hostile Work Environment and Retaliation**

Plaintiffs Grant, Flanagan and Thompson allege that Defendants GSSC, Mastorta and Brown violated 42 U.S.C. § 1981. Am. Compl. ¶ 212. According to the Amended Complaint, Defendants GSSC, Mastrota and Brown deliberately discriminated against Plaintiff Grant by allowing Defendants Mastrota, Brown and eventually Smeland, to harass, retaliate, and discriminate against Plaintiff Grant based upon race and color and/or opposition to the discriminatory acts. *Id.* at ¶ 210. Further, Plaintiffs allege that "Grant has been subjected to discrimination due to his race and color in that he was forced to work in an extremely hostile environment, was subjected to micro-aggressions and demeaned by Defendants Mastrota and Brown. Plaintiff Grant was stripped of title, demoted, suffered loss of pay, was set up by Defendants Mastrota and Brown in an attempt to manufacture a basis to discipline and terminate him." *Id.* at ¶ 208. Plaintiffs Grant, Flanagan and Thompson allege that they were treated differently and retaliated against because of speaking up on behalf of Plaintiff Grant and in opposition of his mistreatment by GSSC, Mastrota and Brown due to his race and color. *Id.* at ¶ 210.

The Girl Scout Defendants move to dismiss Plaintiffs' claim of discrimination arguing that Plaintiffs requested to amicably separate from GSSC and therefore, Plaintiffs' attempt to connect Plaintiff Grant's race to his termination fails. GSCC Mem. at 8. Further, the Girl Scout

Defendants argue that Plaintiffs' Amended Complaint fails to allege that Grant would have been treated differently but for his race. *Id*. The Former Officer Defendants also argue that Plaintiffs' have failed to allege the required but for causation. [3]  Former Off. Def. Mem. at 8-9.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. "To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).  In addition, "a plaintiff must . . . prove that, but for race, [he] would not have suffered the loss of a

---

[3] Neither of the Defendant Groups address Plaintiffs' claims for hostile work environment or retaliation under Section 1981 in their motions to dismiss.  Indeed, as set forth in the Preliminary Statement of the Girl Scout Defendants' memorandum in support of their motion to dismiss, "Plaintiffs' race-based discrimination claims under 42 U.S.C § 1981 ("Section 1981") should be dismissed because Plaintiffs' conclusory allegations do not meet Section 1981's heightened pleading standard. This standard requires Plaintiffs to plead that but-for Plaintiff Grant's race, he would not have been subjected to the various actions, which the Amended Complaint fails to do."  GS Mem. at 2.  With respect to Plaintiffs' claim pursuant to NYSHRL, the Girl Scout Defendants note that Plaintiffs' race-based discrimination claims under the New York State Human Rights Law ("NYSHRL") should be dismissed because Plaintiffs do not show that Girl Scouts of Suffolk County, Inc. ("GSSC") terminated Plaintiff Grant's employment because of his race, as required. Further, because the alleged adverse action of termination occurred one year after the purported protected activity, Plaintiffs cannot establish the requisite causal connection to state a retaliation claim." *Id*.  On reply, the Girl Scout Defendants argue that their motion asserts that all claims fail based upon pleading deficiencies without regard to any particular plaintiff.  However, the motion fails to address pleading deficiencies in either the retaliation claim or hostile work environment claim and therefore those claims remain.

legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020).

A claim of discrimination under Section 1981 requires a showing of intentional discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982). Therefore, at the pleading stage, a plaintiff must "specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Wade v. Kay Jewelers, Inc.*, No. 3:17-cv-990 (MPS), 2018 U.S. Dist. LEXIS 158260, 2018 WL 4440532, at *7 (D. Conn. Sept. 17, 2018) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)); *Jones v. City of New York*, 14-CV-0826 (CBA) (RLM), 2015 U.S. Dist. LEXIS 13951 ("to avoid dismissal, a plaintiff must allege facts supporting 'a facially plausible inference that the [d]efendants' actions were motivated by [discriminatory] animus.'") (quoting *De La Peña v. Metro. Life Ins. Co.,* 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014)); *see also Idlisan v. N. Shore-Lone Island Jewish Health Sys., Inc.,* No. 13-cv-2345 (SJF) (GRB), 2014 U.S. Dist. LEXIS 71578, 2014 WL 2157540, at *6-7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claims because "the complaint fails to plead any facts linking defendant's [actions] to [plaintiff's] race [or] national origin").  "Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss." *Gaddy v. Waterfront Comm'n*, No. 13-cv-3322 (AT) (HBP), 2014 U.S. Dist. LEXIS 139007, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald assertions of discrimination . . . unsupported by any comments, actions, or

examples . . . from which we could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss").

To infer discriminatory intent at the motion to dismiss stage, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination through evidence of overt discriminatory conduct or disparate treatment."  *Santiago v. 1199 SEIU,* No. 18-CV-06711 AMD RLM, 2020 U.S. Dist. LEXIS 134128, 2020 WL 4350048, at *4 (E.D.N.Y. July 29, 2020) (quotation omitted); *see also O'Hara  v. Bd. of Coop. Educ. Servs., S. Westchester,* No. 18-CV-8502, 2020 U.S. Dist. LEXIS 47210, 2020 WL 1244474 at *11 (S.D.N.Y. Mar. 16, 2020) (explaining that, in order to survive a motion to dismiss, "Plaintiff must establish not only the presence of discriminatory motive, but that this motive was a 'but-for' cause of the adverse action").

### A.  Overt Discriminatory Conduct

Although Plaintiffs check off a laundry list of acts of "discriminatory conduct," including demotion, pay cuts and ultimately termination of employment, nowhere in the Amended Complaint does Plaintiff set forth any facts which state directly or by inference that any such actions were taken by Defendants on the basis of race.  Plaintiffs do not identify any comments directly referencing Plaintiff Grant's race.  Instead, Plaintiffs argue that "Defendants utilized the

angry 'Black man' stereotype against Mr. Grant as well as the 'Black slacker' stereotype in reference to Mr. Grant's mother. Such 'openly discriminatory oral statements' are sufficient to support 1981 claims at the pleading stage."[4] Pl. Mem. at 8. To support this position, Plaintiffs point to the following statements as racial stereotypes:

- Plaintiff Grant was "incompetent, expendable and the recipient of nepotism," Am. Compl. ¶ 47;

- "be careful, with Mr. GRANT because he could get angry and destroy GSSC property including its computer systems infrastructure," *id.* at ¶¶ 52, 207; and

- Grant "is not busy enough" and he makes "too much money," *id.* at ¶ 55.

"Section 1981 recognizes 'dog-whistle racism,' or 'the use of code words and themes which activate conscious or subconscious racist concepts and frames.'" *Thelwell v. City of New York*, No. 13 Civ. 1260 (JGK), 2015 U.S. Dist. LEXIS 98406, 2015 WL 4545881, at *11 (S.D.N.Y. July 28, 2015) (quoting *Lloyd v. Holder*, No. 11cv3154, 2013 U.S. Dist. LEXIS 178456, 2013 WL 6667531, at *9 (S.D.N.Y. Dec. 17, 2013)). "[F]acially non-discriminatory terms" may "invoke racist concepts that are already planted in the public consciousness," such as "welfare queen," "terrorist," "thug," and "illegal alien." *Id.* "In determining whether race-neutral words are used as racially charged code words, 'various factors' are important, such as 'context, inflection, tone of voice, local custom, and historical usage.'" *Id.* (quoting *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006) (per curiam) (holding that use of "boy," without any racial modification, may be evidence of discrimination)).

---

[4] Plaintiffs allege "KYLE GRANT forced to endure the race based verbal assault upon the legacy of his mother, Yvonne Grant by MASTROTA, [and] collective Plaintiffs were exposed to the false and negative remarks regarding Ms. Grant, her work ethic, and the clearly unmerited attack on the way in which the GSSC was operated under her leadership." Am. Compl. ¶ 114.

As pointed out by Defendants, in this action "Plaintiffs fail to allege that Defendants made any race-based comment or that they actually referred to Mr. Grant as an "angry black man" or stated that his mother was a "black slacker."  GS Def. Reply at 3.  "There is no evidence from context that the terms 'angry' . . . was racially charged in any way, and there is no evidence that in [his] entire employment at . . . anyone used a racial epithet to describe the plaintiff. Allegations that a plaintiff was stereotyped as an 'angry black [man]' 'could support a claim for racial and/or gender discrimination,' but in this case the plaintiff's 'subjective interpretation'" of [defendants'] use of 'critical but facially non-discriminatory terms does not, itself, reveal discriminatory animus.'"  *Thelwell,* 2015 U.S. Dist. LEXIS 98406, 2015 WL 4545881, at *11 (citing *Humphries v. City Univ. of N.Y.*, No. 12-CV-2641, 2013 U.S. Dist. LEXIS 169086 (S.D.N.Y. Nov. 26, 2013)); *see also, e.g., Myers v. Doherty*, 2021 U.S. Dist. LEXIS 229215, 2021 WL 5599502, at *12-13 (S.D.N.Y. Nov. 30, 2021), aff'd, 2022 U.S. App. LEXIS 26982, 2022 WL 4477050, aff'd, 733 F. App'x 561 (2d Cir. 2018) (dismissing claim based upon stereotypes where complaint alleged plaintiff was told he could not use white supervisors restroom but no facts are alleged to demonstrate prohibition was race based); *Humphries,*  2013 U.S. Dist. LEXIS 169086, 2013 WL 6196561, at *9 (use of words such as "belligerent," "hostile," and "aggressive" could not support inference of discrimination absent "other concrete factual allegations" suggesting discriminatory motive).  Plaintiffs here have failed to allege facts supporting the conclusion that the facially non-discriminatory terms cited above were racially motivated.

Plaintiffs allegations that Mastrota stated that Plaintiff Grant was "incompetent, expendable and the recipient of nepotism," Am. Compl. ¶ 47, and Grant "is not busy enough" and he makes "too much money," *id*. at ¶ 55, similarly fail to support an inference of racism.

25

Plaintiffs' disagreement with Mastrota's evaluation of Plaintiff's ability to perform the work expected of him does not create an inference of discrimination. *See, e.g., Yeger v. Inst. of Culinary Educ., Inc*., No. 14-CV-8202, 2017 U.S. Dist. LEXIS 10753, 2017 WL 377936, at *11 (S.D.N.Y. Jan. 25, 2017) ("[A]n employee's general disagreement with a supervisor's evaluation of the employee's job performance, by itself, does not create an inference of discrimination or constitute proof of pretext."); *Cruse v. G & J USA Publ'g*, 96 F. Supp. 2d 320, 330 n.9 (S.D.N.Y. 2000) ("An employee's opinion that a performance review was unfair supported by only h[is] own conclusory statements to that effect, cannot bootstrap h[is] claims into a Title VII claim of discrimination") (internal quotation marks omitted).

Beyond Plaintiffs' subjective beliefs, the record is devoid of evidence that Grant was the subject of discrimination because of his race. No defendant ever used any racial epithets or called Plaintiff any inappropriate names. Plaintiffs do not allege that Defendants said anything to Grant, or that Grant (or any of the Plaintiffs) ever overheard Mastrota or Brown say anything to anyone else, that supported Plaintiffs' belief that Mastrota was prejudiced or biased against Black people. *See, e.g., Lizardo v. Denny's, Inc*., 270 F.3d 94, 104 (2d Cir. 2001) ("If, as plaintiffs contend, the defendants exaggerated or lied about plaintiffs' behavior, the record does not support a finding that they did so to mask race discrimination. No comment or statement made by the defendants had any racial content or overtone."); *Alexidor v. Donahoe*, No. 11-CV-9113, 2017 U.S. Dist. LEXIS 30410, 2017 WL 880879, at *6 (S.D.N.Y. Mar. 2, 2017) (dismissing discrimination claim where plaintiff, among other things, failed to provide evidence of discriminatory comments by supervisors or co-workers directed at plaintiff or others in her protected groups). Absent such allegations. Plaintiffs have failed to allege facts demonstrating overtly discriminatory conduct.

26

## B.  Disparate Treatment

In the absence of overtly discriminatory comments, Plaintiffs can demonstrate circumstances giving rise to an inference of discrimination through evidence of disparate treatment.  Plaintiffs here have failed to do so.  Plaintiffs allege that Mastrota's "unethical behavior included cutting salaries up to 40%, removing employees from their titles, threatening employees, misrepresenting the financial status of GSSC and publicly demeaning GSSC employees."  Am. Compl. ¶ 43.  Noticeably absent is any claim of discrimination.  In support of their claim of discrimination, Plaintiffs allege that Plaintiff Grant received the "highest pay cut at 40%." Am. Compl. ¶ 53.  Yet, later in the Amended Complaint, Plaintiffs' allege that  Plaintiff Flanagan also had his salary "reduced by a total of 40% . . . .", undercutting their claim of discrimination.  *Id.* at ¶ 79.  Plaintiffs also allege that in the summer of 2020, Jackie Castillo was removed from her position of Training Manager and Defendant Mastrota replaced her with a Caucasian employee as Training Manager. Although this position managed no staff, the Caucasian employee was still given a "manager" title and "manager" compensation, which was explicitly denied Plaintiff Grant."  *Id.* at ¶ 61.  However, a plaintiff claiming disparate treatment must allege facts to establish that "[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).[5]  Plaintiffs here have failed to do so, and

---

[5] Although the question of whether an employee is similarly situated to the plaintiff is generally a question of fact for the jury to decide, courts in this Circuit have held that the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated.  *See, e.g., Wolfinger v. Consol. Edison Co. N.Y., Inc.,* No. 17-CV-1710, 2018 U.S. Dist. LEXIS 128183, 2018 WL 3637964, *8 (E.D.N.Y. July 31, 2018) (granting motion to dismiss because "[w]ithout any information about Plaintiff's allegedly similarly situated comparator, the court is unable to find that Defendant engaged in a pattern of disparate treatment rising to the level of unlawful discrimination"); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 319 (S.D.N.Y. 2014) ("[A]lthough, [a]t the motion to dismiss stage, . . . evidence [of similarly situated comparators] is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately

therefore have failed to raise an inference of discriminatory conduct based upon disparate treatment. *See, e.g., Wallace v. Crab House, Inc.,* No. 21-cv-5757 (LJL), 2023 U.S. Dist. LEXIS 42025, 2023 WL 2477819 (S.D.N.Y. Mar. 13, 2023) (dismissing complaint based upon plaintiffs failure to allege facts sufficient to establish that he was similarly situated to his alleged comparators"); *Batiste v. City Univ. of New York,* 2017 U.S. Dist. LEXIS 105575, 2017 WL 2912525, at *9 (S.D.N.Y. July 7, 2017) (finding that plaintiff "failed to create an inference of discrimination based upon disparate treatment" where she failed to allege comparators' "job descriptions or responsibilities" or their performance).

"Indeed, the plaintiff's claim 'must offer more than conclusory statements' and 'the complaint must contain factual allegations supporting the plausible inference that the employer discriminated against the plaintiff because of the plaintiff[']s protected characteristic." *Harris v. NYU Langone Med. Ctr.,* No. 12 Civ. 454, 2013 U.S. Dist. LEXIS 99328, 2013 WL 3487032 (S.D.N.Y. July 9, 2013) (internal citation omitted); *see also Samuel v. Bellevue Hospital Center,* 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming dismissal of employment discrimination claim due to the plaintiff's failure to "allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic."); *Briggs v. SCO Family of Servs.*, No. 16-CV-3882 (JFB)(SIL), 2019 U.S. Dist. LEXIS 24528 (E.D.N.Y. Feb. 13, 2019) (complaint

---

determine that the comparators are similarly situated")(internal quotation omitted); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,* 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) ("At the motion to dismiss stage, such evidence is not necessary; however, a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated").

dismissed because no allegations linking adverse employment action to membership in a protected class). Despite Plaintiffs allegations detailing the alleged mistreatment of Plaintiff Grant, Plaintiffs have not offered a single allegation supporting an inference of discrimination. "Hostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable" under Section 1981. *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination"). Accordingly, the undersigned respectfully recommends that Plaintiffs' Section 1981 discrimination claim against GSSC, Mastrota and Brown be dismissed, without prejudice, pursuant to Rule 12(b)(6). As noted above, Defendants have not moved to dismiss Plaintiffs' retaliation or hostile work environment claims under Section 1981, and therefore, those claims remain.

### 6. Sixth Count – NYSHRL Discrimination and Retaliation Claims

Plaintiffs Grant, Flanagan and Thompson also allege that Defendants GSSC, Mastorta and Brown discriminated against Grant in violation of the NYSHRL, created a hostile work environment and retaliated against Grant, Flanagan and Thompson. Am. Compl. ¶¶ 219-20. The Girl Scout Defendants move to dismiss Plaintiffs' claims of discrimination and retaliation because Plaintiffs' Amended Complaint fails to meet the NYSHRL's pleading standard requiring Plaintiffs show Girl Scout Defendants terminated Plaintiff Grant because of his race, Plaintiffs merely point to conclusory statements and comments that are not race based to form their claim, and Plaintiffs cannot establish the causal connection between the protected activity and the

adverse employment action required to state a claim of retaliation.  GS Def. Mem at 20-23.  The Former Officer Defendants argue that the NYSHRL claims asserted against them must be dismissed because the adverse employment action occurred after they left GSSC.  Former Officer Def. mem. at 9-10.  Plaintiffs address Defendants' arguments seeking dismissal of Plaintiffs' Section 1981 and NYSHRL claims together.  Pl. Mem. at 7-10.

As discussed above, Plaintiffs have failed to allege factual support for their claim of discrimination, relying solely upon conclusory assertions of discrimination.  Accordingly, this claim must also be dismissed.

Plaintiffs have also asserted a claim for retaliation under the NYSHRL on behalf of Plaintiffs Grant, Thompson and Flanagan.  "To establish a prima facie case of retaliation under the NYSHRL, as under [Title VII], a plaintiff-employee must show that (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action."  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2012).  With respect to Plaintiffs' claim of retaliation pursuant to NYSHRL, the Girl Scout Defendants argued that Plaintiffs had failed to establish a causal connection between the protected activity and the adverse employment action because too much time had passed between the protected activity and the adverse employment action.[6]  Girl Scout Def. Mem. at 22.

---

[6] Since, "the 'same pleading standards apply' to retaliation claims under . . . section 1981, and the NYSHRL," *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2020 U.S. Dist. LEXIS 198655, , at *84, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) (citing *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-cv-5693 (SJF) (AKT), 2017 U.S. Dist. LEXIS 27542, 2017 WL 9485647, at *21 n.14 (E.D.N.Y. Feb. 23, 2017) (collecting cases), report and recommendation adopted, 2017 U.S. Dist. LEXIS 51964, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017)), this argument applies to Plaintiffs' claim of retaliation under Section 1981 as well. However, Defendants have failed to move to dismiss Plaintiffs' claims for retaliation or hostile work environment under Section 1981, and the undersigned will not *sua sponte* dismiss those claims.

"A plaintiff may establish the causal connection indirectly by showing that the protected activity was closely followed by the retaliation, or directly by showing evidence of retaliatory animus." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.,* No. 21-cv-11237, 2023 U.S. Dist. LEXIS 15505, 2023 WL 1109702, at *9 (S.D.N.Y. Jan. 30, 2023).

Plaintiffs failed to address this argument in opposition to the Girl Scout Defendants' motion to dismiss, which amounts to a concession of this argument.[7] *See, e.g., Western Bulk Carriers KS v. Centauri Shipping Ltd.,* No. 11 Civ. 5952 (RJS), 2013 U.S. Dist. LEXIS 49808, at *9 (S.D.N.Y. Mar. 11, 2013) (holding that plaintiff conceded argument by failing to address it in opposition brief); *In re UBS AG Secs. Litig.,* Master File No. 07 Civ. 11225 (RJS), 2012 U.S. Dist. LEXIS 141449, at *34 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address).

Accordingly, the undersigned respectfully recommends that Plaintiffs' claims for discrimination and retaliation pursuant to NYSHRL be dismissed.  Because Plaintiffs have conceded the lack of a causal connection between the protected activity and the adverse employment action, the retaliation claim should be dismissed with prejudice, however, Plaintiffs should be given the opportunity to replead the discrimination claim.  Defendants have not moved to dismiss the hostile work environment claim, and therefore that claim remains.

7.  **Seventh Count – NYLL Section 198**

Defendants move to dismiss Plaintiffs' claims for unpaid wages pursuant to NYLL Section 198 because those provisions cover claims for wages earned in the past but unpaid. It

---

[7] The Court notes that these arguments apply with equal force to Plaintiffs' claim for retaliation pursuant to Section 1981, however, Defendants have failed to move to dismiss the Section 1981 retaliation claim.

does not cover the prospective reduction of salary.  GS Def. Mem. at 17.  Additionally, Defendants argue that since Plaintiffs' employment was at will, as a matter of New York law, GSSC had a right under the NYLL to reduce Plaintiffs' salary prospectively. *Id.*  In response, Plaintiffs argue that "the Defendants GSSC failed to pay Plaintiffs for the full ten day pay cycle they were entitled following their termination, without any good faith basis" thus clarifying the claim asserted in the Amended Complaint.  Pl. Mem. at 27; *see also* Am. Compl., ¶ 224 ("GSSC failed to pay Plaintiffs their complete salaries for the pay cycle in which Plaintiffs were terminated, despite a pattern and practice of paying separated employees for the full ten (10) day pay cycle in which they worked when terminated").

As recognized by Defendants, there is nothing in the NYLL which requires an employee to be paid on days in which he/she did not work.  Instead, Plaintiffs claim their entitlement is based on a "pattern or practice" by GSSC.  NYLL Section 198 applies to the recovery of unpaid wages. *See generally* NYLL § 198.  Since Plaintiffs have failed to allege they were not paid for days which they work, but rather claim they should have been paid for days they did not work, the undersigned respectfully recommends this claim be dismissed.

### 8.  Eighth Count – State and Federal False Claims Act Claims

Defendants move to dismiss Plaintiffs' claim under the FCA and NY FCA, arguing that Plaintiffs have failed to allege that they have engaged in protected activity as required to state at claim under those statutes.[8]  GS Def. Mem. at 11-12; Former Off. Def. Mem. at 11-12.  Plaintiffs

---

[8] In is unclear from the Amended Complaint whether Plaintiffs are asserting this claim against only GSSC or all Defendants.  To the extent Plaintiffs intended to assert this claim against any defendant other than GSSC, the undersigned recommends that such claim be dismissed with prejudice because numerous courts in this Circuit have held that "there is no individual liability for retaliation under [the federal and state False Claims Acts]." *McKoy v. Uliss,* No. 17 Civ. 3398, 2017 U.S. Dist. LEXIS 107182, 2017 WL 2963456, at *2 (E.D.N.Y. July 11, 2017).

contend that they have adequately alleged protected activity, but will be able to supplement these allegations upon the commencement of discovery.  Pl. Mem. at 15.  Plaintiffs further argue that the Amended Complaint makes clear that Plaintiffs knew and asked the Board and Executive Committee to take note and take action about what was taking place in the use and acceptance hundreds of thousands of dollars of PPP funds under the CARES Act that "should be used to keep people working."  Pl. Mem. at 17.

"The False Claims Act ('FCA') prohibits persons from presenting false or fraudulent claims to the government for payment and contains a whistleblower provision intended to encourage those employees with knowledge of such fraud to come forward." *Moor-Jankowski v. Bd. of Trustees of New York Univ.,* No. 96 Civ. 5997 (JFK), 1998 U.S. Dist. LEXIS 12305, 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998).[9]  To protect whistleblowers and "'encourage any individuals knowing of Government fraud to bring that information forward,'" the FCA includes an anti-retaliation provision.  *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007) (citing S. Rep. No. 99-345, at *2 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5266-67); *see also Garcia v. Aspira of N.Y., Inc*., 2011 U.S. Dist. LEXIS 41708, 2011 WL 1458155, *3 (S.D.N.Y. Apr. 13, 2011) ("This whistleblower provision was intended to protect persons who assist in the discovery and prosecution of fraud, because few individuals will expose fraud if they fear their disclosures will lead to harassment, demotion, loss of employment or any other form of

---

(collecting cases from courts in this Circuit); *see also United States v. Canzoneri*, No. 20-CV-505-LJV, 2023 U.S. Dist. LEXIS 106491, at * 22, 2023 WL 4082376 (W.D.N.Y. June 20, 2023) (dismissing retaliation claims against individual defendants under FCA and NYFCA).

[9] The NYFCA "is closely modeled on the federal FCA." *U.S. ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp.3d 497, 509 (S.D.N.Y. 2014). The NYFCA imposes liability for "knowingly mak[ing] a false statement or knowingly fil[ing] a false record." *People v. Sprint Nextel Corp*., 26 N.Y.3d 98, 21 N.Y.S.3d 158, 42 N.E.3d 655, 661 (2015). Therefore, "it is appropriate to look toward federal law when interpreting the New York act." *State ex rel. Seiden v. Utica First Ins. Co.,* 96 A.D.3d 67, 943 N.Y.S.2d 36, 39 (2011) (citation omitted).

retaliation.").  The Court notes that this is not a qui tam action and Plaintiffs' claims under the federal False Claims Act and New York False Claims Act sound only in retaliation.

To sustain a claim under the FCA's anti-retaliation provision, a plaintiff must establish that: "(1) the employee engaged in conduct protected under the FCA; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." *Adiram v. Catholic Guardian Services*, No. 13-cv-6235 (SLT) (JO), 2015 U.S. Dist. LEXIS 130111, 2015 WL 5706935 (E.D.N.Y. Sept. 23, 2015) (granting a motion to dismiss because plaintiffs well-pleaded allegations concerned only health and safety, not fraud against the government). (quoting *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 102 (D. Conn. 2006)).

Here, Defendants challenge Plaintiffs' assertion that they engaged in protected activity. Protected conduct under the FCA encompasses: "[i] lawful acts done by the employee . . . in furtherance of an action under the FCA, and [ii] other efforts to stop one or more violations of the FCA." *N.Y. ex rel. Khurana v. Spherion Corp.*, No. 15 Civ. 6605 (JMF), 511 F. Supp. 3d 455, 2021 U.S. Dist. LEXIS 1876, 2021 WL 50890, at *11 (S.D.N.Y. Jan. 6, 2021) (citation and internal quotation marks omitted).  Accordingly, "an employee's activities may be protected even where an FCA suit has not been filed." *Faldetta*, 2000 U.S. Dist. LEXIS 16216, 2000 WL 1682759, at *12.  While protected activity is "interpreted broadly," an "employee's purpose must not be detached from the [FCA] in order for the employee to receive the FCA's whistle blower protections." *Garcia v. Aspira of N.Y., Inc.*, No. 07 Civ. 5600 (PKC), 2011 U.S. Dist. LEXIS 41708, 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011) (alteration in Garcia) (quoting *Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1051 (N.D. Ill. 1998)).  "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the

34

Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 579 U.S. at 181.

Plaintiffs allege that the July 2020 Letter, which forms the basis of Plaintiff's FCA claim, "was drafted in response to the abuses, violations, false information and unethical treatment of the five (5) Plaintiffs and on behalf of other employees too fearful to come forward due to the treatment which was being suffered employees including but not limited to the Plaintiffs, and actions which Plaintiff realized would place the entire GSSC organization, including its members and programs in jeopardy." Am. Compl. ¶ 41. The Amended Complaint also alleges that on April 1, 2020, under the leadership of Yvonne Grant, GSSC applied for PPP loans with the intention of restoring to work any laid off staff by June of that year, GSSC received $602,000.00 under the CARES ACT but that "under the leadership of Defendants, a majority of the furloughed staff were never reinstated, they were in fact fired."[10]  *Id.* at ¶¶ 95, 96. The Amended Complaint, however, fails to plead that the April 2020 CARES Act applications were based upon fraud. Plaintiffs allege that

> The GSSC applied for, and received $602,000.00 under the CARES ACT. However, under the leadership of Defendants, a majority of the furloughed staff were never reinstated, they were in fact fired. This was not only unnecessary and contrary to the code and goal of Girl Scouts, but was unethical and illegal. Not only was the Paycheck Protection Plan funds of $602,000.00 available and earmarked for that specific purpose of retaining these employees, but the GSSC had more than $5 million in liquid assets. According to the Chief Financial Officer, based on GSSC's available cash assets at that time, the firings and reductions in pay had nothing to do with finances. There was no causal relationship between the available cash on hand and both the excessive salary cuts and failure to reinstate employees.

Am. Compl. ¶ 96.

---

[10] The Amended Complaint does not contain any allegation with respect to the repayment of amounts received by GSSC.

"While an actual FCA violation is not a prerequisite for a retaliation claim, the plaintiff is required to show a good faith basis, or objectively reasonable basis, for believing that he or she was investigating matters in support of a viable FCA case." *Golub v. Berdon LLP*, No. 19 Civ. 10309, 2021 U.S. Dist. LEXIS 29458, 2021 WL 637974, at *3 (S.D.N.Y. Feb. 17, 2021) (internal quotation marks omitted). The "term 'protected conduct' as it applies to the first prong is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions . . . . [T]he plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government." *Moor-Jankowski,* 1998 U.S. Dist. LEXIS 12305, 1998 WL 474084, at *10 (omission and alteration in original) (citation and internal quotation marks omitted). To be protected, the conduct must be specifically directed at "exposing or deterring fraud." *Garcia v. Aspira of New York, Inc*., No. 07 CIV. 5600 PKC, 2011 U.S. Dist. LEXIS 41708, 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011) (citations omitted). Thus, Plaintiff's allegations must include facts supporting an inference that Plaintiff was contemplating filing a qui tam action or reporting GSSC to the government for fraud. *See United States v. Amedisys, Inc.,* No. 17-CV-136 (JLS), 2023 U.S. Dist. LEXIS 41910 (W.D.N.Y. Mar. 13, 2023) ("Relators appear to have raised concerns about the quality of care provided to patients, with vague references to billing. But absent facts connecting those concerns to fraudulent billing, claims submitted to the Government, or mention of liability, these allegations are insufficient to show that they engaged in protected activity."); *Giurca v. Orange Reg'l Med. Ctr*., 2019 WL 6529285, at *2 (S.D.N.Y. Dec. 4, 2019) ( ("Dr. Giurca does not adequately allege that he engaged in protected conduct because he did not make a complaint directed at exposing a fraud upon the government. Each of his complaints to Dr. Rojas and the NYS OMH concerned either his workload, Dr. Al-Tariq's pattern of compromising patient

36

safety, or ORMC's toleration of Dr. Al-Tariq's conduct. Dr. Giurca did not report to anyone that defendants engaged in billing practices that defrauded the government"); *Adiram v. Catholic Guardian Servs*., No. 13 Civ. 6235 (SLT), 2015 U.S. Dist. LEXIS 130111, 2015 WL 5706935, at *5 (E.D.N.Y. Sept. 28, 2015) (dismissing False Claims Act retaliation claim because "Plaintiffs were apparently motivated by concerns about the health and safety of their residents, not by financial fraud" and because their allegations that defendant "submitted invoices to the federal and New York State governments for payment for services that were not actually provided to Defendant's residents" are "conclusory" and "do not support an inference that Plaintiffs were engaged in any conduct in furtherance of an action under [the FCA] or other efforts to stop a violation of the FCA") (alteration in original) (citation and internal quotation marks omitted).

Here, Plaintiffs allege that:

Plaintiffs, at great risk to themselves, engaged in investigating, exposing and hopefully deterring the abuse of the staffing and salary process and the violations of agreements and laws governing non-discriminatory use of federal funds which had been mandated by the United States government and it was Plaintiff's purpose to expose and deter such future abuses through their whistleblower complaint and testimony which addressed gross mismanagement of salary and staffing processes.

Am. Compl. ¶ 236; *see also id*. at ¶ 90 ("[c]oncerned for the good of the employees the GSSC and its programs, as well as those that they served, on June 8, 2020 Plaintiffs acting as whistleblowers, forwarded a letter to the Board"); Thus, by Plaintiff's own admission, their challenge to GSSC's use of funds was intended to prevent "abuse of the staffing and salary process" and was not specifically directed at exposing fraud on the government.

Accordingly, the undersigned respectfully recommends that Plaintiffs' FCA and NY FCA claims be dismissed.[11]

### 9. Leave to Amend

In opposition to Defendants' motions to dismiss Plaintiffs have sought leave to file a second amended complaint should the Court's decision on the motion deem such an amendment necessary. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *see McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007) (holding "it is within the sound discretion of the district court to grant or deny leave to amend"). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "The Federal Rules [of Civil Procedure] reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 181-82 (citation and internal quotation marks omitted).

The undersigned recommends that Plaintiffs' NLRA, FCA, NYLL and Not-for-Profit Law claims be dismissed with prejudice, and therefore repleading would be inappropriate. In

---

[11] Since Defendants have failed to move to dismiss each of Plaintiffs' federal claims, the undersigned respectfully recommends that Defendants' motion should be denied to the extent is suggests this Court should refuse to exercise supplemental jurisdiction of Plaintiffs' state law claims.

addition, Plaintiffs have conceded the argument with respect to their NYSHRL retaliation claims and, therefore, that claim should be dismissed with prejudice as well. However, given the relatively early stages of this action, Plaintiffs should be afforded one final opportunity to replead their Section 1981nad NYSHRL discrimination claims.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated:  Central Islip, New York
       August 25, 2023

                            _____/s/_____

                            ARLENE R. LINDSAY
                            United States Magistrate Judge

40